# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| CELANESE INTERNATIONAL CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-07-2981 |
| OXYDE CHEMICALS, INC., | § § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This patent infringement case is before the Court on the Motion for Partial Summary Judgment ("Motion") [Doc. # 28] filed by Defendant Oxyde Chemicals, Inc. ("Oxyde"). After a period of time for discovery, Plaintiff Celanese International Corporation ("Celanese") filed a Response [Doc. # 39], and Defendant filed a Reply [Doc. # 40]. Having reviewed the full record and having applied the relevant statutes and the governing legal authorities, the Court **grants** Defendant's Motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Celanese is the owner of United States Patent Number 5,144,068 ("the '068 Patent") covering a process and method for producing acetic acid with a high catalyst stability. Celanese alleges that Oxyde infringed the '068 Patent when it imported into

the United States acetic acid that had been produced in China using the patented process.

The acetic acid at issue was purchased by Oxyde from a Chinese supplier and resold to a Mexican entity. The acid was loaded on a ship in China on September 1, 2007, bound for the Port of Houston, Texas. By letter dated September 14, 2007, Celanese gave Oxyde notice of the '068 Patent and the allegation that the subject acetic acid had been produced using the patented process. At that time, the shipment of acid was en route to Houston. The acetic acid arrived at the Port of Houston in early October 2007, where it was transferred to a different vessel for shipment to Oxyde's customer in Mexico.

Celanese filed this lawsuit, alleging that this "importation" constituted patent infringement under 35 U.S.C. § 271(g). Celanese also asserted a patent infringement claim under § 271(a) and an inducement claim under § 271(b). Oxyde filed an Answer denying infringement and a counterclaim asserting claims of tortious interference with existing contract, tortious interference with prospective relations, and business disparagement.

## II.  STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312

(5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not

meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## III.   ANALYSIS

### A.   Section 271(a) Direct Infringement Claim

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . infringes the patent." 35 U.S.C. § 271(a); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.* 420 F.3d 1369, 1375 (Fed. Cir. 2005). Section 271(a) proscribes direct infringement of a patented invention. The patented invention covered by the '068 Patent is a process, and the unauthorized use of that process directly infringes the patent. *See, e.g., United States v. Studiengesellschaft Kohle, m.b.h.*, 670 F.2d 1122, 1128 (D.C. Cir. 1981). There is neither an allegation nor evidence that Oxyde used Celanese's patented process to

manufacture acetic acid.[1]  As a result, Defendant is entitled to summary judgment on Plaintiff's § 271(a) direct infringement claim.

### B.     Section 271(b) Inducement Claim

Section 271(b) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  A claim of inducement requires proof that (1) there was direct infringement by a third party and (2) the defendant/inducer knew or should have known that its actions would induce direct infringement by the third party.  *See, e.g., ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004).  "The requirement that the alleged infringer knew or should have known his actions would induce actual infringement necessarily includes the requirement that he or she knew of the patent."  *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006).

Plaintiff has failed to present evidence of direct infringement by a third party.[2]  The acetic acid at issue was produced in China by a Chinese company.  This conduct

---

[1]   In its Response, Plaintiff did not address Defendant's Motion as it relates to the § 271(a) claim.

[2]   In its Response, Plaintiff argues that Defendant had the required knowledge, but does not address the direct infringement element of its inducement claim.

was not "within the United States" and, as a result, was not direct infringement of the '068 Patent by the Chinese company. Absent direct infringement, there can be no inducement by Defendant and summary judgment on this claim is granted.

### C.    Section 271(g) Importation Claim

"Whoever without authority imports into the United States . . . a product which is made by a process patented in the United States shall be liable as an infringer, if the importation . . . occurs during the term of such process patent." 35 U.S.C. § 271(g). For purposes of its Motion, Defendant does not contest the importation requirement for a § 271(g) claim.

Defendant relies on 35 U.S.C. § 287(b)(2), which provides that remedies for infringement under § 271(g) are unavailable "with respect to any product in the possession of, or in transit to, the person subject to liability under [§ 271(g)] before that person had notice of infringement with respect to that product." 35 U.S.C. § 287(b)(2). It is uncontroverted that Defendant first received notice on September 14, 2007, of the '068 Patent and of Plaintiff's contention that the acetic acid in question was produced using the patented process. It is also undisputed that by that date the acetic acid was on board the transporting vessel in transit to Defendant. As a result, the product (the acetic acid) was in transit to the person subject to liability (Defendant)

before that person had notice of infringement with respect to that product and the remedy exclusion in § 287(b)(2) applies.[3]

The § 287(b)(2) modification of remedies provision is not available, however, to any person who "had knowledge before the infringement that a patented process was used to make the product the importation . . . of which constitutes the infringement." 35 U.S.C. § 287(b)(1)(C). In this case, Plaintiff argues that Defendant had the knowledge required by § 287(b)(1)(C) before the acetic acid arrived in the United States. Plaintiff has failed, however, to present evidence that raises a genuine issue of material fact regarding Defendant's alleged knowledge.

Defendant argues persuasively that "knowledge" as used in § 287(b)(1)(C) must be different from "notice" as used in § 287(b)(2). Generally, when the legislature uses one word in one part of a statute and a different word in a different part of the same statute, "the court assumes different meanings were intended." *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 n.9 (2004) (internal quotations and citations omitted).

---

[3] Plaintiff argues that § 287(b)(2) does not apply in this case because the acetic acid was not in the possession of or in transit to Defendant. Plaintiff has not presented evidence to support this argument. Indeed, Plaintiff alleged in its Complaint that Defendant purchased from the Chinese manufacturer the acetic acid "currently being shipped" on the vessel bound for the Port of Houston. *See* Complaint [Doc. # 1], ¶ 10. Similarly, Plaintiff alleged in its Memorandum seeking expedited discovery that Defendant purchased the acetic acid and chartered the vessel to transport it to Mexico, first entering the Port of Houston for transfer to a different cargo ship. *See* Memorandum in Support of Motion to Expedite Discovery [Doc. # 11], p. 2.

Additionally, in § 287, the term "notice" is defined to mean either actual knowledge or receipt of written notification, indicating that knowledge and notice are not synonymous. *See* 35 U.S.C. § 287(b)(5)(A).[4] Actual knowledge is sufficient for notice, but notice may not necessarily constitute knowledge.

In this case, it is undisputed that Defendant received on September 14, 2007, written notification of the '068 Patent and of Plaintiff's allegation that the acetic acid was manufactured using the patented process. The process covered by Claim 1 of the '068 Patent requires:

> reacting methanol with carbon monoxide in a liquid reaction medium containing a rhodium catalyst and comprising water, acetic acid, methyl iodide, and methyl acetate and subsequently recovering acetic acid from the resulting reaction product, the improvement which comprises: maintaining in said reaction medium during the course of said reaction about 0.1 wt% to less than 14 wt% of water together with (a) an effective amount in the range of about 2 wt% to 20 wt% of a catalyst stabilizer selected from the group consisting of iodide salts which are soluble in said reaction medium in effective concentration at reaction temperature, (b) about 5 wt% to 20 wt% of methyl iodide, and (c) about 0.5 wt% to 30 wt% of methyl acetate.

---

[4] Specifically, in subsection 5 of § 287, "notice" is defined to mean "actual knowledge, *or* receipt by a person or a written notification, *or* a combination thereof, of information sufficient to persuade a reasonable person that it is likely that a product was made by a process patented in the United States." 35 U.S.C. § 287(b)(5)(A) (emphasis added).

*See* Claim 1, '068 Patent.  There is no evidence, however, to raise a genuine issue of material fact that Defendant had ***knowledge*** before the product arrived in the United States that it was made using this patented process.

Although there is uncontroverted evidence that Defendant received notice of the '068 Patent on September 14, 2007, while the acetic acid at issue was already on a ship in transit to Mexico through the Port of Houston, there is no evidence that Defendant had knowledge that the acetic acid on board the ship on September 14, 2007, was produced in a manner covered by Claim 1 – or any other claim – of the '068 Patent.  As a result, § 287(b)(1)(C) does not apply to prevent Defendant from relying on the modification of remedies provision of § 287(b)(2).[5]

## IV.   CONCLUSION AND ORDER

Plaintiff has failed to present evidence to raise a genuine issue of material fact in support of its infringement claims under § 271(a), (b), and (g).  Accordingly, it is hereby

**ORDERED** that Defendant's Motion for Partial Summary Judgment [Doc. # 28] is **GRANTED**.  It is further

---

[5]   Oxyde properly acknowledges that it has now received notice of the '068 Patent and, as a result, would not be entitled to rely on § 287(b)(2) for any future importations of acetic acid which may infringe the '068 Patent.

**ORDERED** that counsel shall appear before the Court on **April 24, 2008, at 2:00 p.m.** for a status and scheduling conference in connection with Defendant's counterclaims.

SIGNED at Houston, Texas, this **4<u>th</u>** day of **April, 2008**.

Nancy F. Atlas
United States District Judge